UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT DELGADO,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>GIPSON, Warden,<br><br>　　　　Respondent. | Case No.: 1:13-cv-00085-AWI-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

Petitioner was convicted of aggravated mayhem and assault with a deadly weapon, for the benefit of a criminal street gang, and sentenced to 15-years-to-life. In this action, he claims there was insufficient evidence to support the aggravated mayhem charge and the criminal gang enhancement and that the trial court erred when it admitted prior statements of the victim. For the reasons set forth below, the Court will recommend the petition be **DENIED**.

## PROCEDURAL HISTORY

Petitioner is serving an indeterminate sentence of fifteen years-to-life after a jury convicted him of aggravated mayhem and assault with a deadly weapon. (Lodged Document ("LD") 1, p. 2). The jury in the Tulare County Superior Court also found true that the crimes were committed for the benefit of a criminal street gang. (Id.).

Petitioner appealed the verdict to the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the conviction. (LD 1). The California Supreme Court denied his

petition for review also.  (LD 5; 6).

# FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's published/unpublished decision[1]:

In March 2009, Delgado, Rolando Jaramillo, Juan Gomez Pizano, Richard Fernandez, and Jorge Verduzco were in custody in the Tulare County jail. Delgado and Verduzco were assigned to the same cell within module No. 41.

The module to which Verduzco and Delgado were assigned was a general population module, but primarily housed those claiming an affiliation with Nortenos. When an inmate is booked, the inmate is interviewed regarding gang affiliation in order to minimize danger from rival gangs. Delgado was a self-identified Norteno; Pizano, Jaramillo, and Fernandez had been classified as Nortenos.

On March 20, 2009, Tulare County Sheriff's Deputy Sarah Torres was in the control booth monitoring module Nos. 41 and 42.  Delgado, Pizano, Fernandez, Jaramillo, and Verduzco were in the common area of module No. 41.  Fernandez left and went upstairs.

Someone called Verduzco over to the area by cell No. 103.  Delgado approached Verduzco as Verduzco neared the cell. Delgado, Pizano, and Jaramillo attacked Verduzco.  Delgado cut Verduzco's face and called Verduzco a snitch.

Fernandez and Torres heard loud screaming.  Torres saw two inmates attacking Verduzco, with another inmate standing near where the attack was taking place.  Through the intercom, Torres ordered the inmates to halt and lie down on the floor, but they continued the attack.  Torres alerted other deputies of the fight in progress and opened the sally port so deputies could enter the module.

Verduzco managed to break away and ran up the stairs; Delgado, Pizano, and Jaramillo followed him.  On the upper level, Verduzco ran toward Fernandez; Fernandez saw blood on Verduzco's face.  Fernandez joined Delgado and the others pursuing Verduzco; they followed Verduzco downstairs to the main level.  At the bottom of the stairs, the men continued their assault on Verduzco.

Deputy Sheriff Duston Gagnon entered module No. 41 through the sally port and saw Delgado, Pizano, and Jaramillo attacking Verduzco.  With the arrival of two other deputies, Delgado and the others complied with orders to lie down on the floor.

Verduzco was bleeding profusely and had blood on his face and torso.  Deputies saw blood on Delgado's pants and shoes; his hands were reddish in color and slightly swollen.

Gagnon asked Verduzco about the attack.  Verduzco told Gagnon that his cellmate had cut him with a blade.  Verduzco also stated that he had been hit multiple times with fists and kicked in the head by more than one inmate.  The cut on his face required six stitches to close.

On December 1, 2009, Delgado was charged with aggravated mayhem and assault with a deadly weapon.  It also was alleged that the offenses were committed for the benefit of a criminal street gang, as described in Penal Code section 186.22, subdivision (b)(1), and that Delgado personally inflicted great bodily injury.

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

At trial, Verduzco denied being a member of the Norteno gang or dropping out of the gang. He acknowledged his cousin was a Norteno.

Sheriff's Detective Mike Yandell had extensive training and experience dealing with criminal street gangs. Yandell testified as a gang expert. Yandell opined that Norteno gang members would exercise control over who stayed in a jail module through assaults and stabbings. Yandell had investigated more than 12 prior jail attacks involving the same type of wound inflicted upon Verduzco. The wound, which was a slice on the face from the top of the ear to the bottom of the chin, was called a "puto mark," "rat mark," or "bitch mark." The scar resulting from the wound would allow other Nortenos to identify the victim as someone not to be trusted.

Yandell first made contact with Delgado on April 19, 2008, at which time Delgado admitted membership in the Norteno gang. Yandell also opined that Pizano and Jaramillo were Norteno gang members, but that Fernandez had changed status and no longer was an active member. In responding to a hypothetical where a victim of an assault in a jail was called a snitch and was cut with the rat mark, Yandell opined that the assault would be gang related.

Defense investigator Don McDonald interviewed Verduzco prior to the start of trial. At that time, Verduzco claimed he did not know who had cut him and that he would not testify at Delgado's trial.

A jury found Delgado guilty of both charges and made true findings on the special allegations. The trial court sentenced Delgado to 15 years to life in prison.

(LD 1, pp. 2-4).

## DISCUSSION

### I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

## II. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001

(9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

**III.  Review of Petitioner's Claims.**

Petitioner alleges the following as grounds for relief: (1) insufficient evidence to support the aggravated mayhem verdict; (2) insufficient evidence to support the criminal gang enhancement; and (3) admission of prior statements of the victim violated Petitioner's right to a fair trial.

A. First Claim

Petitioner first contends that insufficient evidence was presented at trial to support the conviction for aggravated mayhem. This contention is without merit.

1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

Delgado contends the evidence was insufficient to support the conviction for aggravated mayhem and the true finding on the gang enhancement. We disagree.

"In reviewing the sufficiency of the evidence to support a conviction, we determine "'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." [Citations.]' [Citation.]  Under such standard, we review the facts adduced at trial in full and in the light most favorable to the judgment, drawing all inferences in support of the judgment to determine whether there is substantial direct or circumstantial evidence the defendant committed the charged crime. [Citations.]  The test is not whether the evidence proves guilt beyond a reasonable doubt, but whether substantial evidence, of credible and solid value, supports the jury's conclusions. [Citations.] [¶]  In making the determination, we do not reweigh the evidence; the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. (Evid.Code, § 312.)  We simply consider whether ""'any rational trier of fact could have found the essential elements of [the charged offenses] beyond a reasonable doubt.'" [Citations.]' [Citation.]  Unless it is clearly shown that 'on no hypothesis whatever is there sufficient substantial evidence to

support the verdict' the conviction will not be reversed. [Citation.]" (People v. Quintero (2006) 135 Cal.App.4th 1152, 1161–1162 (Quintero).)

If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances also might be reconciled reasonably with a contrary finding. (People v. D'Arcy (2010) 48 Cal.4th 257, 293.) "The standard is the same, regardless of whether the prosecution relies mainly on direct or circumstantial evidence. [Citation.]" (People v. Vazquez (2009) 178 Cal.App.4th 347, 352.)

The standard of review for sufficiency of the evidence of a substantive offense is also the standard applicable to reviews of the sufficiency of the evidence to support a gang enhancement finding. (People v. Villalobos (2006) 145 Cal.App.4th 310, 321–322 (Villalobos).)

Aggravated mayhem

Delgado contends the evidence was insufficient to sustain the aggravated mayhem conviction because there was no specific intent to maim, as demonstrated by the lack of any prior conflict between Delgado and Verduzco, and this was simply a random attack. Delgado is mistaken; evidence of specific intent to maim was present.

Section 205 provides: "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body. For purposes of this section, it is not necessary to prove an intent to kill...."

Specific intent to maim is an essential element of aggravated mayhem. (§ 205; Quintero, supra, 135 Cal.App.4th at p. 1167.) "[S]pecific intent to maim may not be inferred solely from evidence that the injury inflicted actually constitutes mayhem; instead, there must be other facts and circumstances which support an inference of intent to maim rather than to attack indiscriminately. [Citation.]" (People v. Ferrell (1990) 218 Cal.App.3d 828, 835 (Ferrell).) Such intent may be inferred, however, "'from the circumstances attending an act, the manner in which it is done, and the means used, among other factors.'[Citation.]" (Quintero, at p. 1162.) For example, evidence that a defendant's attack was aimed at a vulnerable part of the victim's body, such as his or her head, supports an inference that the defendant specifically intended to cause a maiming injury. (Ibid.; People v. Park (2003) 112 Cal.App.4th 61, 69 (Park).)

In People v. Sears (1965) 62 Cal.2d 737, 740–741, 745, overruled on another ground by People v. Cahill (1993) 5 Cal.4th 478, 509–510, footnote 17, the court held that the evidence was insufficient to establish specific intent to maim when the defendant attacked his estranged wife with a steel pipe and then struck his stepdaughter with the pipe when she tried to intervene, causing a laceration to the stepdaughter's lip and nose. The court stated that the evidence showed only an indiscriminate attack rather than an intent to maim the stepdaughter.

In contrast, in Park, supra, 112 Cal.App.4th 61, the defendant, convicted of aggravated mayhem, had sat down with fellow gang members next to a rival gang at a restaurant and the two groups exchanged stares. The defendant aimed for the victim's head, but hit the victim's arm three or four times with the weapon while the victim used his arm to block the blow. With a final blow, the defendant hit the victim's mouth, resulting in eight broken teeth and profuse bleeding. (Id. at p. 65.) The court found specific intent to maim because the attack was not indiscriminate, the defendant aimed at an extremely vulnerable part of the victim's body, and he stopped his attack once he had maimed him. Also considered by the court was the defendant's choice of weapon, a steel weapon instead of his fists. (Id. at pp. 69–70.)

6

In Ferrell, supra, 218 Cal.App.3d 828, the defendant, convicted of both attempted second degree murder and aggravated mayhem, arrived at the victim's apartment and then shot the victim in the neck from a distance of about two feet. The bullet severed the victim's spine and resulted in severe partial paralysis. (Id. at pp. 831–832.) The court concluded the evidence of intent to maim was sufficient when the defendant shot the victim in the neck at close range, causing her to become permanently paralyzed, because such a shot was highly likely to disable permanently and because the attack was directed and controlled. (Id. at pp. 833–836.)

In Quintero, supra, 135 Cal.App.4th 1152, the defendant focused a knife attack on the victim's head, stopping after maiming the victim's face. (Id. at p. 1163.) This was held to be sufficient evidence of specific intent to maim. (Ibid.) In People v. Szadziewicz (2008) 161 Cal.App.4th 823 (Szadziewicz), evidence of an attack with a knife directed at the victim's face was sufficient to show specific intent to maim. (Id. at pp. 831–832.)

The present case has important similarities to Park, Ferrell, Quintero, and Szadziewicz. Viewed in the light most favorable to the judgment, the evidence was more than sufficient to establish that Delgado had the specific intent to maim, regardless of any history or lack thereof of prior confrontations between Verduzco and him. Verduzco was Delgado's cellmate. Verduzco was called over to cell No. 103, where Delgado and two others were waiting for him. As Verduzco approached the cell, Delgado and two others attacked him, cut Verduzco's face apparently with a blade, and called him a snitch. The cut on Verduzco's face required six stitches to close. Yandell testified that the mark cut into Verduzco's face was called a puto mark, rat mark, or bitch mark and the wound and resulting scar were used to identify people the Norteno gang did not trust.

The attack on Verduzco was not a random attack; Verduzco was targeted. The attack was not spontaneous; it was well planned. Verduzco deliberately was called toward cell No. 103, allowing Delgado and two others to attack him. One of the first injuries inflicted on Verduzco was the distinctive cut to his face to mark him as a snitch, which Delgado had labeled him. Delgado attacked Verduzco with a blade, which required planning on Delgado's part in order to obtain possession of the blade while incarcerated. Delgado apparently was indifferent to the pain he was inflicting on Verduzco to the extent that he refused orders to cease and desist until after he had finished cutting Verduzco's face.

The jurors were entitled to infer, from all of the evidence presented and circumstances of the attack, that Delgado specifically intended to maim Verduzco by cutting his face. We reject his claim to the contrary.

(LD 1, pp. 3-7).

2. <u>Federal Standard</u>.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2761, 61 L.Ed.2d 560 (1979), the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319; <u>see also Lewis v. Jeffers</u>, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt

beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" See id., *quoting* Jackson, 443 U.S. at 319. Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations. See id. at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). However, mere suspicion and speculation cannot support logical inferences. Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275.[2]

Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v.

---

[2] Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims. See Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005).

Wilson, 477 U.S. 436, 459 (1986).  This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts.  Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption.  Sumner v. Mata, 455 U.S. 539, 597 (1981).

In Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."

Cavazos, 132 S.Ct. at 3.

> "Jackson says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  443 U.S., at 319, 99 S.Ct. 2781.  It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326, 99 S.Ct. 2781.

Cavazos, 132 S.Ct. at 6. [3]

3. Analysis.

Petitioner contends that insufficient evidence was presented that Petitioner had the specific intent required under California law to elevate simple mayhem to aggravated mayhem.  Petitioner is incorrect.

As the 5th DCA explained, Cal. Penal Code § 205 specifies that an individual is guilty of

---

[3] To the extent that the 5th DCA's opinion does not expressly cite the Jackson v. Virginia standard in analyzing the sufficiency claims herein, it must be noted that, long ago, the California Supreme Court expressly adopted the federal Jackson standard for sufficiency claims in state criminal proceedings.  People v. Johnson, 26 Cal.3d 557, 576 (1980). Accordingly, the state court applied the correct legal standard, and this Court's only task is to determine whether the state court adjudication was contrary to or an unreasonable application of that standard.

9

1  aggravated mayhem when that person "unlawfully, under circumstances manifesting extreme
2  indifference to the physical or psychological well-being of another person, intentionally causes
3  permanent disability or disfigurement of another human being or deprives a human being of a limb,
4  organ, or member of his or her body."  The state court went on to explain that the attack on the victim
5  was not random but targeted, that it was well-planned, and that Petitioner's intent was to mark the
6  victim by cutting on his face in a distinctive manner indicating that the victim was a "snitch."  The
7  court also noted that Petitioner followed the victim and continued the attack after the victim had
8  initially escaped, thus showing his indifference to the pain he was inflicting on the victim.

Such evidence is more than sufficient to satisfy Jackson.  Indeed, it is unclear what additional evidence Petitioner would require to satisfy the specific intent requirement for aggravated mayhem.  Accordingly, the state court's adjudication was not objectively unreasonable and, hence, the claim should be denied.

B. Second Claim

Petitioner next contends that insufficient evidence was presented at trial to support the criminal gang enhancement.  This contention is also without merit.

1. The 5th DCA's Opinion.

The 5th DCA denied Petitioner's claim as follows:

> Establishing the truth of the section 186.22, subdivision (b) gang allegation requires a two-part showing. (Villalobos, supra, 145 Cal.App.4th at pp. 321–322.)  The prosecution must establish the underlying crime was "committed [ (1) ] for the benefit of, at the direction of, or in association with any criminal street gang, [and (2) ] with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).)
>
> Delgado's challenge is directed at the first prong of section 186.22, subdivision (b)(1).  He argues the evidence was insufficient to establish the section 186.22, subdivision (b) enhancement because the instant offenses were not committed for the benefit of a criminal street gang.  This contention ignores the language of the statute, which requires that the offense be committed in association with a criminal street gang or for the benefit of a criminal street gang.
>
> There rarely is direct evidence that an offense was committed for the benefit of a criminal street gang and triers of fact routinely draw inferences from the facts and circumstances surrounding the offense.  (People v. Margarejo (2008) 162 Cal.App.4th 102, 110.)  A series of cases have found substantial evidence to support gang enhancements in cases where gang members commit offenses with fellow gang members, since such conduct satisfies the statutory requirement that the offenses must be committed "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1), italics added; see also People v. Morales (2003) 112 Cal.App.4th 1176, 1197–1198 (Morales); People v. Romero (2006) 140 Cal.App.4th 15, 19–20 (Romero); People v. Martinez (2008) 158 Cal.App.4th 1324, 1332–1333.)

> The California Supreme Court recently decided People v. Albillar (2010) 51 Cal.4th 47 (Albillar), addressing the section 186.22, subdivision (b) gang enhancement. In Albillar, the defendants sexually assaulted the victim inside an apartment; the three gang members who committed the crimes were related to each other. (Albillar, at p. 51.) There was no gang graffiti left in the apartment and no throwing of gang signs. (Id. at pp. 51–53.)
>
> The California Supreme Court concluded the evidence was sufficient to support a finding that the crimes met the first prong of section 186.22, subdivision (b)(1) because the crimes were committed in association with the gang: "Defendants not only actively assisted each other in committing these crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together." (Albillar, supra, 51 Cal.4th at pp. 61–62.) By committing crimes together, gang members increase their status among those participating in the crimes and among the entire gang. (Id. at p. 61.)
>
> Section 186.22, subdivision (b)(1) requires that the offense be committed for the benefit of a criminal street gang or in association with any criminal street gang. Here, Delgado committed the crimes in association with fellow gang members, Pizano, Jaramillo, and Fernandez. Consequently, Delgado committed the crimes in association with a criminal street gang. (Albillar, supra, 51 Cal.4th at pp. 61–62; Morales, supra, 112 Cal.App.4th at pp. 1197–1198.)
>
> We also believe the evidence established that Delgado committed this offense specifically to benefit his gang. Delgado attacked Verduzco and specifically cut the rat mark into his face, which a reasonable juror could infer was done to benefit Delgado's Norteno gang because it marked Verduzco as someone the gang members should not trust.
>
> The second prong of section 186.22, subdivision (b)(1) also is satisfied. When it is demonstrated that a gang member intended to commit the current offense, intended to commit the offense in association with another person, and knew the other person to be a member of his gang, then the specific intent requirement of section 186.22, subdivision (b)(1) has been met. (Villalobos, supra, 145 Cal.App.4th at p. 322.)
>
> In People v. Leon (2008) 161 Cal.App.4th 149, the defendant and an accomplice were members of the same gang; they stole a car and threatened an eyewitness. The defendant argued there was insufficient evidence that he committed the offenses for the benefit of his gang. Leon relied on Morales and Romero and rejected this argument because "a 'specific intent to benefit the gang is not required.' [Citation.]" (Leon, at p. 163.)
>
> As the court stated in Albillar, the specific intent requirement "is unambiguous and applies to any criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced." (Albillar, supra, 51 Cal.4th at p. 66.)
>
> We conclude there was ample evidence that Delgado's attack on Verduzco satisfied the requirements of section 186.22, subdivision (b)(1).

(LD 1, pp. 8-10).

    2. <u>Analysis</u>.[4]

In its decision, the 5th DCA explained that the prosecution must show both that Petitioner

---

[4] The federal standard for sufficient of the evidence was detailed in the previous section and will not be repeated here.

11

committed the crimes for the benefit of a gang and with the specific intent to benefit the gang. As to the first prong, the state court noted that Petitioner, who was shown to be affiliated with a criminal street gang, carried out his attack in concert with other individuals who were members or former members of that same criminal street gang. This concert of action between members of the same gang is sufficient to permit a reasonable juror to conclude that Petitioner acted for the benefit of a gang.

As to the second prong, Petitioner's attempt to "mark" the victim as a snitch in order that fellow gang members could thereafter identify the victim as such established that Petitioner had the specific intent to benefit the street gang. Under such circumstances, it is specious to suggest that insufficient evidence was presented to support the special allegation. Accordingly, the claim should be denied.

C. Third Claim

Finally, Petitioner contends that the admission of prior statements by the victim violated his right to due process and a fair trial. Specifically, Petitioner objects to the victim's statements, made to Deputy Sheriff Gagnon shortly after the assault, that identified Petitioner as one of the assailants and detailed the manner in which, and the reasons why, Petitioner and other gang members had carried out the assault. (LD 5). This contention also lacks merit.

1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

Delgado contends the trial court erred in admitting Verduzco's out-of-court statement to law enforcement personnel as a spontaneous statement pursuant to Evidence Code section 1240. Delgado claims the admission was erroneous because the statement did not qualify as an exception to the hearsay rule and its admission violated his constitutional rights.

A trial court's evidentiary ruling admitting hearsay statements is reviewed for abuse of discretion. (People v. Lynch (2010) 50 Cal.4th 693, 752.) We conclude the trial court did not abuse its discretion in admitting Verduzco's statement.

As an appellate court, we review judicial action, not judicial reasoning. (City of National City v. Wiener (1992) 3 Cal.4th 832, 850 (conc. opn. of Baxter, J.) [well-settled principle of appellate review that correct decision of trial court must be upheld even if based on erroneous reasoning].) If the ultimate result arrived at by the trial court is correct on any theory of the law relevant to the case, it must be affirmed. (Davey v. Southern Pacific Co. (1897) 116 Cal. 325, 329; Day v. Alta Bates Medical Center (2002) 98 Cal.App.4th 243, 252, fn. 1.)

**Prior inconsistent statement**

Although the trial court refused to admit the statement as a prior inconsistent statement, the statement could have been admitted under that exception to the hearsay rule. While failure of recollection does not automatically render the conversation admissible as a prior inconsistent statement, under certain circumstances it will. "'Normally, the testimony of a witness that he or

she does not remember an event is not inconsistent with that witness's prior statement describing the event.'" (People v. Ervin (2000) 22 Cal.4th 48, 84.)  Inconsistency will not be implied unless a witness's claim of lack of memory amounts to deliberate evasion. (Ibid.)

To admit the prior statement, there must be a "reasonable basis in the record for concluding that the witness's 'I don't remember' statements are evasive and untruthful." (People v. Johnson (1992) 3 Cal.4th 1183, 1219–1220.)  Here, Verduzco admitted he told a defense investigator prior to trial that he did not want to testify or participate in the trial.  At trial, Verduzco admitted he did not want to be on the stand testifying.  While testifying, Verduzco had a failure of recollection as it pertained to Delgado's role in the attack.  The trial court reasonably could have found Verduzco was being evasive or untruthful when he testified he could not remember.

**Spontaneous statement**

As we conclude the statement was admissible as a prior inconsistent statement, we do not have to decide the statement's admissibility as a spontaneous statement.  We also need not address Delgado's claim that its erroneous admission adversely affected his constitutional rights.

(LD 1, pp. 11-12).

2. <u>Federal Standard</u>.

The Fourteenth Amendment prescribes: "No state shall ... deprive any person of life, liberty, or property, without due process of l aw." U.S. const. amend XIV, § 1. As such, no person can be imprisoned as a result of a trial that was fundamentally unfair due to the admission of prejudicial evidence. United States v. Curtin, 489 F.3d 935, 958 (9th Cir.2007) (en banc) (reversing and remanding for retrial because the defendant did not "receive[ ] the due process and fair trial to which he is entitled under our Constitution" (citing Bollenbach v. United States 326 U.S. 607, 612 (1946))).  Nevertheless, state court evidentiary rulings cannot serve as a basis for habeas relief unless the asserted error rises to the level of a federal constitutional violation. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); Jammal v. Van de Kamp, 926 F.2d 918, 919–20 (9th Cir.1991) ("the presence or absence of a state law violation is largely beside the point"). It is "well settled that a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process." Spivey v. Rocha, 194 F.3d 971, 977–78 (9th Cir.1999); see also Larson v. Palmateer, 515 F.3d 1057, 1065 (9th Cir.2008) (for purposes of federal habeas review, it is "irrelevant" whether or not an evidentiary ruling is correct under state law; the only question is whether the ruling rendered the trial so fundamentally unfair as to violate due process); Drayden v. White, 232 F.3d 704, 710 (9th Cir.2000) ("The improper admission of evidence does not violate the Due Process Clause unless it is clearly prejudicial and 'rendered the trial fundamentally unfair.'") (citation omitted);

see Payne v. Tennessee, 501 U.S. 808, 825 (1991).

The Supreme Court has admonished that the category of infractions that violate "fundamental fairness" has been defined very narrowly. Estelle v. McGuire, 502 U.S. 62, 72 (1991). In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir.2009), the Ninth Circuit noted the "Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams, 529 U.S. at 375, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. at 1101. Thus, a petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended by 421 F.3d 1154 (9th Cir.2005).

While adherence to state evidentiary rules suggests the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. Jammal v. Van de Kamp, 926 F.2d at 919 (citing Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir.1983)). "Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" Jammal, 926 F.2d at 920 (citation omitted).

> A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision. "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not." In such cases, "we must rely on the jury to sort [the inferences] out in light of the court's instructions." Admission of evidence violates due process "[o]nly if there are no permissible inferences the jury may draw" from it.

Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.2005) (citations omitted).

3. Analysis.

As discussed above, regardless of whether the state court was correct in admitting the challenged statements under state evidentiary rules, the only issue before this Court is whether the admission of those statements "render[ ] the state proceedings so fundamentally unfair as to violate due process." Spivey v. Rocha, 194 F.3d at 977–78; Larson v. Palmateer, 515 F.3d at 1065. For the reasons below, the Court concludes that their admission did not violate due process.

1        At trial, Richard Fernandez, an inmate who was present in the area of the attack when it
2   occurred, testified that Petitioner was one of the men he saw chasing the victim. (LD 8, p. 78).  He
3   also identified two other men correctional officers saw with Petitioner at the time of the assault, i.e.,
4   Jaramillo and Pizano.  (Id., p. 79).  Fernandez also identified two of the assailants by photographs that
5   were shown in court.  (Id., p. 97).

6        Dustin Gagnon, a deputy sheriff, was in charge of the area where the assault occurred when he
7   was advised by an officer that a fight was taking place in one of the modules under Gagnon's control.
8   (LD 8, p. 105).  Gagnon had to run from the module he was in to the adjacent module where the fight
9   was occurring. (Id.).  When Gagnon got to the module where the fight was taking place, he saw the
10  victim, covered in blood, being attacked by three men.  (Id., pp. 109-110).  The three attackers had
11  pinned the victim against the wall and Gagnon "just saw arms and legs swinging." (Id., p. 110).
12  Gagnon identified Petitioner as one of the assailants.  Gagnon immediately ordered all three assailants
13  to get on the ground and they complied.  (Id., p. 111).  In addition to Petitioner, there were two other
14  attackers, Pizano and Jaramillo.  (Id., p. 112).  Gagnon took Fernandez aside and the latter provided a
15  statement to the officer regarding the assault.  (Id., p. 113).  Under questioning, and after reviewing his
16  police report, Gagnon conceded that he had initially written that, in addition to Jaramillo, Pizano, and
17  Petitioner, Fernandez was also one of the assailants.  (Id., p. 119).

18       Deputy Sheriff Ryan Macelvaine was called to the crime scene immediately after the attack
19  and then later processed the crime scene.  (LD 8, p. 121).  When he arrived, he saw the victim lying in
20  front of him on the ground, covered in blood.  (Id.).  He also saw several inmates lying on the ground.
21  (Id.).  Petitioner was one of those inmates.  (Id., p. 123).  Later, Macelvaine took photographs of
22  Petitioner's pants and shoes because they had blood on them.  (Id., p. 143).  The officer also observed
23  blood on the clothing of Pizano, Fernandez, and Jaramillo.  (Id., pp. 147-149).

24       From this evidence, the prosecution clearly established Petitioner's central role in the attack on
25  the victim.  Both the correctional officers and a participant, Fernandez, identified Petitioner as being
26  actively involved in the attack.  Any probative value of the hearsay statements of the victim, made to
27  Gagnon soon after the attack, was merely cumulative.  Thus, the Court cannot conclude that the
28  admission of this cumulative evidence was so fundamentally unfair as to violate Petitioner's right to

due process. Spivey v. Rocha, 194 F.3d at 977–78.  Moreover, in light of the overwhelming evidence of Petitioner's guilt presented at trial, the Court concludes that any error was harmless because it could not have had a "substantial and injurious effect or influence" on the outcome of the trial.  Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993).

## RECOMMENDATION

Accordingly, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be **DENIED** with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 2, 2015**          /s/ Jennifer L. Thurston
                                      UNITED STATES MAGISTRATE JUDGE